**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Walter Thomas Sowell, Jr., ) | No. CV 07-1738-PHX-JAT |
| Plaintiff, ) | **ORDER** |
| vs. ) |  |
| Freescale Semiconductor, Inc., ) |  |
| Defendant. ) |  |

Currently pending before the Court is Defendant Freescale Semiconductor's ("Freescale") Motion to Dismiss (Doc. #6) that, pursuant to Rule 12(d), the Court converted to a motion for summary judgment under Rule 56 (Doc. # 17). As part of the conversion, the Court ordered briefing on two issues: (1) whether equitable tolling applies in this case; and (2) whether the General Release (Doc. #6, Ex. #1) effectively bars Plaintiff's claims. In addition to briefing those issues in his supplemental briefing (Doc. # 18), Plaintiff Walter Thomas Sowell sought leave to file an amended complaint pursuant to Rule 15(a). The Court now rules on the pending motion and Sowell's request for leave to amend his complaint.

**I.    BACKGROUND**

On September 11, 2007, Sowell, proceeding *pro se*, filed a complaint against Freescale alleging disability- and race-related discrimination, retaliation, and wrongful termination under the American with Disabilities Act ("ADA") and Title I of the Civil Rights Act of 1991. Sowell is an African-American diagnosed with hyperparathyroidism. He

alleges this disability "result[s] in severe, debilitating muscular and skeletal pain, chronic myofascial pain, migraine headaches, fatigue, flu-like symptoms, chronic depression, osteoporosis/osteopenia, and other symptoms." (Compl. ¶ 5.) Sowell worked for Freescale as an engineer and manager since June of 1992. (Compl. ¶ 12.) He claims Freescale discriminated against him on the basis of his race and disability prior to and as part of his termination on June 24, 2005.

In response to Sowell's complaint, Freescale filed a Motion to Dismiss (Doc. # 6) asserting that Sowell's claims are barred by applicable statute of limitations and by Sowell's release of all employment-related claims against Freescale through his acceptance of the Freescale Semiconductor Involuntary Severance Plan General Release (the "Release") (Doc. # 19, Ex. #2) and severance package (Doc. #19, Exs. #1, 3). Either as part of or sometime after Sowell's termination, Freescale gave Sowell the Release paperwork which he signed on October 24, 2005. The Release, in part, states:

> I am signing this Release knowingly and voluntarily, I acknowledge that: (1) I have been advised in writing to consult an attorney before signing this Release . . . (3) the severance allowance and severance benefit provided under the Freescale, Inc. Involuntary Severance Plan . . . which I will receive for signing this release are consideration . . . (4) I have been given up to forty-nine (49) days to consider this Release, and an additional seven (7) days after signing to revoke it in writing; (5) I have read and understand this Release and further understand that it includes a general release of any and all known and unknown claims to date I may have against Freescale . . . (7) no statement or conduct by Freescale have in any way coerced or unduly influence me to execute this Release.

(Doc. # 19, Ex. #2) The Release also specifies that it "includes, but is not limited to, any claim . . . arising under any federal law," mentioning as examples Title VII, the ADA, and the FMLA. *Id.* In exchange for signing the Release, Freescale gave Sowell severance benefits and pay in the amount of $32,268 on November 4, 2005. (Doc. #19, Ex. #1.) Freescale maintains and Sowell doesn't dispute that Sowell has not returned the severance money to Freescale.

After acquiring counsel, Sowell responded to Freescale's motion by arguing that, in his complaint, he had alleged facts that would entitle him for relief under Title VII[1] and 42 U.S.C. § 1981,[2] in addition to the ADA. (Doc. # 10 at 2-3.) Sowell argues that the statute of limitations for his § 1981 claims has not run. He concedes, however, that he did not file within the statutes of limitations for his other non-§ 1981 claims. (Doc. # 18 at 5.) But, he asks this Court to apply the doctrine of equitable tolling to the other claims because his disability prevented him from filing within the limitations period.[3] Furthermore, he argues that the Release is not enforceable because the same disability caused him to lack the capacity to enter into a legally enforceable contract.

## II.  ANALYSIS

### A.  Summary Judgment

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323.

---

[1] For purposes of this motion, the Court will assume he alleged a Title VII violation.

[2] In his complaint, Sowell alleged violations of Title I of the Civil Rights Act of 1991. However, part of Title I amended 42 U.S.C. § 1981. Thus, Freescale moved to dismiss by arguing that some of Sowell's claims had exceeded the statute of limitations for § 1981–as if Sowell had alleged its violation in his complaint. Now that Sowell has counsel, he wants to re-label the Title I violation into, at least, two separate § 1981 violations. For the purposes of the present motion, the Court considers the alleged Title I violations as § 1981 violations.

[3] Sowell's complaint did not mention equitable tolling, nor did his response to Freescale's motion to dismiss explain how it might apply. Thus, the Court ordered supplemental briefing on this and the issue of the Release when the Court converted the motion to dismiss to one for summary judgment.

The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247-48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

**1. Statute of Limitations for the ADA and Title VII Claims**

Freescale moved to dismiss on the basis that Sowell's ADA and Title VII claims were "untimely for failure to timely file a charge of discrimination and failure to file suit within 90 days of receiving a right-to-sue letter." (Doc. # 16 at 1.) Sowell does not dispute that the statute of limitations has run, but contends that he is entitled to equitable tolling.

For Title VII and ADA actions, a claimant must file a charge with the EEOC within 300 days of the date of the discriminatory act if proceedings were initially instituted with a qualified State or local agency. 42 U.S.C. § 2000e-5(e)(1); *see Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1115-16 (9th Cir.2003) (applying the 300-day filing period to Title VII claims); *Douglas v. Cal. Dept. of Youth Auth.*, 271 F.3d 812, 823 (9th Cir. 2001) (applying the 300-day filing period to ADA claims). Additionally, after the EEOC issues a right-to-sue letter, a claimant must bring a civil action against the respondent named in the charge within 90 days. 42 U.S.C. § 2000e-5(f)(1); *see Scholar v. Pac. Bell*, 963 F.2d 264, 266-67 (9th Cir. 1992). The Ninth Circuit "measure[s] the start of the limitations period from the date on which a right-to-sue notice letter arrived at the claimant's address of record." *Payan v. Aramark Management Services Ltd.,* 495 F.3d 1119, 1122 (9th Cir. 2007).

The latest discriminatory act alleged by Sowell was his wrongful termination on June 24, 2005. Sowell filed the charge with the EEOC and the Arizona Attorney General's Office, Civil Rights Division, 672 days later, on April 27, 2007. (Doc. # 19, Ex. #4.) The EEOC mailed the right-to-sue letter on May 30, 2007. Sowell filed suit 104 days later, on September 11, 2007. Because Sowell filed more than 300 days from the alleged wrongful termination and filed his complaint over 90 days after receiving notice from the EEOC,[4] his ADA and Title VII claims are time-barred.

Sowell concedes that his non-§ 1981 claims would be time-barred but for equitable tolling.

**2. Equitable Tolling for the ADA and Title VII Claims**

Sowell argues that the doctrine of equitable tolling should apply because his disability prevented him from filing within the limitations period for his ADA and Title VII claims. Freescale argues and the Court agrees that Sowell has failed to meet his burden of establishing "extraordinary circumstances" that would entitle him to equitable tolling.

Equitable tolling of the statute of limitations applies "when extraordinary circumstances beyond the plaintiff's control made it impossible to file a claim on time." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999) (citing *Alvarez-Machain v. United States*, 107 F.3d 696, 700 (9th Cir. 1996)). Aside from this and few other exceptions, "[e]quitable tolling is unavailable in most cases" because of the "high hurdle" to its application. *Corjasso v. Ayers*, 278 F.3d 874, 877 (9th Cir. 2002) (internal quotation marks and citation omitted); *see also Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 152 (1984) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants.").

For example, in *Grant v. McDonnell Douglas Corp.*, the plaintiff, claiming mental incompetency, failed to offer adequate evidence to survive summary judgment and entitle

---

[4] Because Sowell concedes that he filed past the statutory period, the Court assumes that the EEOC right-to-sue letter arrived at his address within 13 days after its mailing.

- 5 -

him to equitable tolling. 163 F.3d 1136, 1138 (9th Cir. 1998). The plaintiff's only evidence was "a letter from a child psychologist stating only that Grant's (undefined) condition interfered with his ability to pursue his legal claim." *Id.* The Ninth Circuit held that the letter was insufficient proof to justify equitable tolling because it "present[ed] no explanation for his failure to pursue his claim within the prescribed limitations period, and is too hypothetical and speculative . . ." *Id.*

Despite the "high hurdle" of the "extraordinary circumstances" exception for equitable tolling, the Ninth Circuit upholds its use when the "impossibility of filing on time" is clear from the evidence. *Stoll*, 165 F.3d at 1242 (9th Cir. 1999) In *Stoll*, the Ninth Circuit held that the plaintiff–an ex-postal worker who claimed she was mentally incompetent during the statutory period as a result of having been repeatedly raped and harassed by fellow employees and supervisors–was entitled to equitable tolling as a matter of law. *Id.* at 1242. The court found that the plaintiff had "presented overwhelming evidence that she was completely psychiatrically disabled during the relevant limitation period." *Id.*

Even taking the evidence offered in a light most favorable to Sowell, the Court finds that Sowell has failed to offer sufficient evidence or allege specific facts that would create a "genuine issue of material fact" of "extraordinary circumstances" that made it "impossible" for him to file within the statutory period. Although he relies on *Stoll*, he has offered nothing to compare to its "extraordinary circumstances." Sowell submited affidavits from his treating physicians and a nurse that confirm his diagnosis of hyperparathyroidism and that he reports and is being treated for chronic fatigue, depression, headaches, back pain, and anxiety disorder. (Doc. # 18, Ex. #2.) He also offers an article on hyperparathyroidism that suggests his disease "affect(s) the quality of [his] life." (Doc. # 18, Ex. #1 at 2) The affidavits and article, however, do not explain "his failure to pursue his claim within the prescribed limitations period, and is too hypothetical and speculative . . ." *Grant*, 163 F.3d at 1138. Morever he makes no such explanation in his brief on summary judgment, stating only that:

> *he will present admissible evidence* . . . to prove that equitable tolling should be applied because of his disabling hyperparathyroidism and resulting symptoms including, inter alia, cognitive function impairments which effectively prevented him from tending to his business and legal affairs between the date of his termination of employment until he filed his Complaint . . . .

(Doc. # 18 at 5) (emphasis added). This single conclusion is the extent of Sowell's argument for equitable tolling. He uses the rest of his brief to argue that he should be given the opportunity to present evidence that equitable tolling should apply.

When the Court converted Freescale's motion to one for summary judgment and ordered supplemental briefing, the Court gave Sowell the exact opportunity to which he argues he is entitled. He contends that five days was not enough to gather the necessary evidence to survive summary judgment.[5] Everything he would need, however, is within his control. Moreover, Sowell was able to acquire three affidavits from Sowell's treating health care practitioners. These affidavits could have demonstrated how Sowell's diagnoses prevented him from proceeding with his claims.

For example, the Court notes that in Dr. Kimbel's affidavit, Dr. Kimbel reports that Sowell was diagnosed with hyperparathyroidism in October 2005 and underwent surgery for it in December 2005, both within 6 months of his termination. (Doc. # 18, Ex. #2 at 2) Without speculating, however, a diagnosis and the report of a surgery does not convey "extraordinary circumstances" such that Sowell was either so physically incapacitated or mentally incompetent that he was unable to manage his legal affairs during the entire statutory period. This affidavit does not even begin to explain why Sowell missed the time for filing an EEOC complaint by 372 days.

Pointedly, Sowell himself does not offer either by an affidavit or in his brief, an explanation for specifically *how* this surgery and diagnosis made it impossible for him to file on time. To the contrary, Dr. Kimbel reports that, although Sowell required continued

---

[5] As Freescale points out, however, Sowell has had since at least the moment he acquired counsel on March 15, 2008 to prepare his claims. Thus when the Court ordered supplemental briefing on June 2, 2008, Sowell already had, at a minimum, 80 days.

- 7 -

treatment, his symptoms improved after surgery. (Doc. # 18, Ex. #2 at 2.) Dr. Kimbel also states that Sowell was able "to return to work in late 2006 but [was] unable to maintain [his] job because of health problems." *Id.* Although this supports the notion that Sowell was disabled, it also suggests that he was at least able to procure new employment. Moreover, in his Equal Employment Opportunity Commission ("EEOC") Intake Questionnaire (Doc. # 20, Ex. # 6),[6] Sowell reported that, after being laid off, he met with an attorney. He dated the questionnaire April 23, 2007. Thus, sometime within the period that Sowell alleges his disability "prevented him from tending to his business and legal affairs," Sowell had the cognitive and physical ability to acquire a new job, meet with an attorney, and file a charge with the E.E.O.C.. This is far from being "completely psychologically disabled" as was the plaintiff in *Stoll*. 165 F.3d at 1242.

Sowell has failed to offer sufficient evidence that would justify equitable tolling. Accordingly, his claims under the ADA and Title VII are time-barred.

### 3. Statute of Limitations for § 1981

In its motion to dismiss, Freescale argue that Sowell's § 1981 claims are time-barred because the applicable statute of limitations is 2 years. (Doc. # 6 at 4.) Sowell counters that these claims are not time-barred because the applicable statute of limitations is 4 years.[7]

Section 1981 does not have its own statute of limitations. 42 U.S.C. § 1981. To avoid varied treatment amongst the states, Congress passed 28 U.S.C. § 1658 to provide a uniform statute of limitations for causes of actions that fall under acts or amendments passed by Congress after December 1, 1990. *Jones v. R.R. Donelley & Sons Co.*, 541 U.S. 369, 382 (2004). Section 1658(a) states that "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may

---

[6] Although the questionnaire was presented by Freescale, Sowell does not dispute its veracity or accuracy.

[7] Sowell did not have to file with the EEOC before alleging 1981 claims, so the 300-day requirement does not apply.

- 8 -

not be commenced later than 4 years after the cause of action accrues." In *Jones*, the Supreme Court specifically held that the 4-year statute of limitations provided by § 1658 applies to § 1981 claims of racially motivated wrongful termination and hostile work environment because these claims were made possible under § 1981 by the 1991 Civil Rights Act.  541 U.S. at 382.

Relying on *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 974 (9th Cir. 2004), Freescale contends that because § 1981 "does not have its own statute of limitations, courts borrow from the most appropriate state statute of limitations."  (Doc. # 6 at 4.)  *Cholla*, however, is inapposite.  There the Ninth Circuit specified that § 1658 did not apply to plaintiff's § 1981 claims because they did not arise out of any post-1990 amendment of § 1981.  382 F.3d at 977-78 (holding that the plaintiff failed to allege facts from which one could infer racial discrimination).

Here, Sowell alleges racial discrimination in a hostile work environment and wrongful termination.  As in *Jones*, because these claims were made possible by a post-1990 amendment of § 1981, § 1658 applies and provides a 4-year statute of limitations for Sowell's § 1981 claims.  Freescale terminated Sowell on June 24, 2005.  Less than 3 years later, Sowell filed his complaint on September 11, 2007.  Accordingly, Sowell's 1981 claims are not time-barred.  The only question remaining is whether Sowell released his legal right to assert these claims against Freescale when he agreed to the Release.

### 4. Release

Sowell does not dispute that the Release covered his claims.  Instead, his sole contention is that "the same cognitive disabilities . . . which entitle him to equitable tolling . . . also give him the defenses [sic] of 'lack of capacity' to invalidate or make the release agreement unenforceable."  (Doc. # 18 at 7.)  Beyond this single statement, Sowell offers no specific evidence or facts as to how his disability made him incapable of "understanding in a reasonable manner, the nature and effect of "signing the release "at the time of execution of the document." *Golleher v. Horton*, 715 P.2d 1225, 1228-29 (Ariz. App. 1985).  Freescale argues that Sowell has not met his burden of proving lack of capacity.  Even if the Court

- 9 -

were to conclude that Sowell had met his burden, Freescale further argues that he ratified the agreement by retaining the severance money. Because the Court concludes that Sowell has not met his burden, the Court does not reach the issue of whether Sowell ratified the Release by retaining the consideration for the Release.

"A general release of [a federal right] does not ordinarily violate public policy. To the contrary, public policy favors voluntary settlement of employment discrimination claims brought under Title VII." *Stroman v. West Coast Grocery Co.,* 884 F.2d 458, 460-61 (9th Cir. 1989) (internal quotation marks and citation omitted) (holding plaintiff's "release of 'all claims' against [employer] . . . was a deliberate, voluntary, and knowing waiver of his Title VII and related claims.") *Stroman* established the standard for evaluating whether an employee has legally waived a federal right in the context of an employment termination agreement:

> the determination of whether a waiver of a federal right was voluntary, deliberate, and informed is predicated upon an evaluation of several indicia arising from the circumstances and conditions under which the release was executed, including the clarity and lack of ambiguity of the agreement, the plaintiff's education and business experience, the presence of a noncoercive atmosphere, and whether the employee had the benefit of legal counsel.

*Nilsson v. City of Mesa*, 503 F.3d 947, 952 (9th Cir. 2007) (internal brackets and ellipses omitted) (quoting *Stroman*, 884 F.2d at 462) (internal quotation marks and citations omitted). Although the *Stroman* inidicia do not specifically include the "lack of capacity" defense, whether a "person is capable of understanding in a reasonable manner, the nature and effect of his act," *Golleher*,715 P.2d at 1228, would necessarily go towards "whether a waiver of a federal right was *voluntary*, *deliberate*, and *informed* . . . ." *Stroman*, 884 F.2d at 462 (emphasis added). Also, for determining whether someone lacked capacity to execute an agreement, "[i]n Arizona there is a presumption of competency which continues despite a subsequent period of incompetency since such persons may have lucid intervals." *Golleher*,715 P.2d at 1229.

Here, Sowell has failed to offer sufficient evidence or allege specific facts that would create a "genuine issue of material fact" to overcome the presumption that he was "capable

of understanding in a reasonable manner, the nature and effect of" signing the release. Sowell claims that "between the date of his termination of employment until he filed his Complaint," he was incapable of "tending to his business and legal affairs . . . ." (Doc. # 19, Ex. #2.) Yet, in his complaint, Sowell claims that "[a]t all relevant times, Walter was able to perform the essential duties of his position as an engineer or engineering manager with reasonable accommodation." (Compl. ¶ 13.) In effect, Sowell claims that the day Freescale terminated him, he was both mentally incompetent *and* able to perform as an engineer and manager. Even setting this inconsistency aside, Sowell does not explain how he was mentally incompetent when he signed the Release in October. Dr. Kimbel's affidavit only states that "[i]n October 2005, [Sowell was] diagnosed with primary hyperparathyroidism," and that "[t]his condition had undoubtedly been present for some time . . . ." (Doc. # 18, Ex. #2 at 2.) A conclusory diagnostic statement, without explaining how the diagnosis proved Sowell's mental incompetency, is not enough to create a "genuine issue of material fact."

Sowell has failed to "set out specific facts showing a genuine issue for trial" on the issues of whether he lacked capacity to enter into a legally enforceable contract when he executed the Release, and whether the statute of limitations for his non-§ 1981 claims should be equitably tolled. Fed. R. Civ. P. 56(e)(2). Accordingly, Freescale is entitled to judgment as a matter of law.

**B.   Leave to Amend Complaint**

As noted above, Sowell seeks leave to file an amended complaint pursuant to Rule 15(a).[8] The Court construes this request pursuant to Rule 15(a)(2). Sowell initially filed his

---

[8] At the time of filing his supplemental brief, Sowell did not need to seek leave to file an amended complaint because Freescale had not yet served Sowell with a responsive pleading. Freescale had only filed its motion to dismiss, which is not a responsive pleading for purposes of Rule 15(a). *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1158 n.5 (9th Cir. 2007) (*quoting Miles v. Dep't of Army*, 881 F.2d 777, 781 (9th Cir. 1989)). Thus, Sowell had the right to amend his complaint "once as a matter of course." Fed. R. Civ. P. 15(a)(1).

Freescale filed an answer on June 27, 2008. (Doc. # 21.) Freescale's filing of an answer cut off Sowell's automatic right to amend. The Court, therefore, will consider the request under Rule 15(a)(2).

1 complaint *pro se*. Because he has since acquired counsel, Sowell wants to "properly label
2 his separate claims for relief" to plead seven distinct claims based upon facts already alleged
3 in his complaint. (Doc. # 18 at 2.) The seven claims would allege violations of: the ADA,
4 42 U.S.C. §§ 12112, 12203; 42 U.S.C. § 1981; Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e-
5 3(a); and the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2612, 2615. *Id.*

6     Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P.
7 15(a). Whether to grant a motion to amend depends on the following factors: (1) undue
8 delay, (2) bad faith, (3) prejudice to the opposing party, (4) futility of amendment, and (5)
9 whether plaintiff has previously amended his complaint. *Western Shoshone Nat. Council v.*
10 *Molini*, 951 F.2d 200, 204 (9th Cir. 1991). "Futility of amendment can, by itself justify the
11 denial of a motion for leave to amend." *Bonin v. Calderon*, 59 F.3d 815, 845-46 (9th Cir.
12 1995) (affirming the district court's denial because amendment "would be futile.").

13     Even if Sowell were to amend his complaint to plead his seven distinct claims, it
14 would not alter the question at hand: whether Sowell's claims are barred by the statute of
15 limitations and the Release. As discussed above, the ADA and Title VII claims are time-
16 barred for failure to file with the EEOC within 300 days of the last discriminatory act and
17 failure to file suit within 90 days from receipt of the EEOC right-to-sue letter. The additional
18 FMLA claim is also time-barred. An FMLA action must be brought no "later than 2 years
19 after the date of the last event constituting the alleged violation for which the action is
20 brought." 29 U.S.C. § 2617(c)(1). Even assuming that the wrongful termination was the
21 "last event constituting the alleged [FMLA] violation," Sowell exceeded the 2-year statutory
22 period by filing over 26 months later. Moreover, the Release specifically addressed these
23 types of claims. And, in regards to the § 1981 claims, the Court has considered them and
24 finds them to be barred by the Release.

25     Because the Court concludes that the seven distinct claims are barred, amendment
26 would be futile. Sowell's request for leave to amend therefore is denied.

27 ///
28 ///

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. # 6), as converted to one for summary judgment (Doc. # 17), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's request for leave to amend his complaint is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's request for attorney's fees is **DENIED** without prejudice, with leave to re-file pursuant to LRCiv 54.2.

DATED this 24th day of July, 2008.

James A. Teilborg
United States District Judge